## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

EARL D. BOOTH,
     Plaintiff,

     v.

SCOTT FINK,
in his individual capacity,

     and

SHERIFF SEAN DUSH,
in his official capacity,
     Defendants

_____/

Case No.: 23-cv-11629
Honorable _____

### COMPLAINT

RELATED CASE:
*Booth v Fink*
(Case No.: 22-cv-10166)

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

_____

### COMPLAINT

     NOW COMES Plaintiff EARL D. BOOTH, by and through counsel, and complains as follows:

### PARTIES

     1.    Plaintiff EARL D. BOOTH is a resident the State of Michigan and is a prison guard who is employed by the Michigan Department of Corrections.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

2.    Defendant SCOTT FINK is an Internal Affairs Investigator at Michigan Department of Corrections and a resident of the State of Michigan; he is sued in his <u>individual</u> capacity.

3.    Defendant SHERIFF SEAN DUSH is the Sheriff of Clinton County, Michigan; he is sued in his <u>official</u> capacity only.

## JURISDICTION

4.    This is a civil action brought inter alia pursuant to 42 U.S.C. § 1983 seeking relief against Defendants for violations of the United States Constitution.

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act.

## GENERAL ALLEGATIONS

6.    Plaintiff EARL D. BOOTH has previously sued Defendant SCOTT FINK, a Michigan Department of Corrections' internal affairs investigator, in relation to his part and participation of enforcing of the Michigan Department of Corrections issued Policy Directive No. 01.04.106, also known as the Department's "Social Media Policy."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

7.     The Social Media Policy recites that "employees" like Plaintiff EARL D. BOOTH "are free to express themselves as private citizens on social media sites" but then conditions the exercise of those rights as private citizens "to the degree that their posts do not impair working relationships, impede the performance of duties, or negatively affect the public perception of the Department."

8.     Plaintiff EARL D. BOOTH has alleged, in *Booth v Fink*, that the Department of Corrections' Social Media Policy, as written, is a form of illegal prior restraint in that it prohibits private citizens, when not acting or working as public officials, from making any social media posts that (subjectively) would negatively affect the public perception of the Department.

9.     Leading up to that lawsuit, Defendant SCOTT FINK conducted an ambush-styled interrogation of Plaintiff EARL D. BOOTH on January 19, 2022 "in regards" to what he calls "Case No. 39544."

10.     An audio recording of that meeting was made by Defendant SCOTT FINK is available at https://youtu.be/W35YNY9w98k.

11.     Defendant SCOTT FINK stated that the interrogation (which he calls an "interview" but is anything but) was undertaken as a result of a "complaint"[1] that was brought to "our attention" that Plaintiff EARL D. BOOTH

---

[1] Defendant SCOTT FINK has refused to identify who was the complainant.

had "released" a video on his personal Facebook page that was "protected internal video from December 19, 2019 where" Plaintiff EARL D. BOOTH "was himself assaulted."

12.    The video Defendant SCOTT FINK was referencing is believed, on information and belief, to be the video where Plaintiff EARL D. BOOTH was "sucker punched."[2]

13.    Defendant SCOTT FINK asserted that materials posted that were "obtained through the employee's professional duties and responsibilities may not be protected under the First Amendment and may form the basis for discipline if deemed detrimental to the Department."

14.    However, none of the materials that were posted were obtained by Plaintiff EARL D. BOOTH *through* his "professional duties and responsibilities" but rather by his own private, off-duty activities.

15.    Plaintiff EARL D. BOOTH explained that he obtained a copy of that video from the local "district attorney" of Jackson (i.e. the Jackson County Prosecutor's Office).

16.    Defendant SCOTT FINK then asserted that there is a Social Media Policy that came into effect in August 2020 which, he states, "prohibits" social media posts that "negatively affect the public perception of

---

[2] See https://www.facebook.com/100012088322093/videos/1174707716275495/

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

the Department."

17.    Defendant SCOTT FINK further asserts that "*any* post should not discredit the Department or any employees;" such an assertion blatantly and obviously violates the First Amendment.

18.    When asked, Defendant SCOTT FINK confirms that the Department does not suspect or believe that Plaintiff EARL D. BOOTH made any of these social media posts while Plaintiff EARL D. BOOTH was at work.

19.    Yet, Plaintiff EARL D. BOOTH's off-work activity on his Facebook page was actively being monitored by agents of the State for speech caused, from the Department's viewpoint, an unfavorable public perception.

20.    Defendant SCOTT FINK asserted that the Social Media Policy applies to Plaintiff EARL D. BOOTH *regardless of whether he is on-duty or off-duty* and that all his private social media posts are subject to the Social Media Policy.

21.    Plaintiff EARL D. BOOTH believes Defendant SCOTT FINK to be wrong and brought a legal challenge in this Court which is pending as Case No. 22-cv-10166.

22.    In a surprise turn of events, Defendant SCOTT FINK was recently arrested by the Michigan State Police Special Investigation Section after they executed a search warrant on May 19, 2023 at a motel located at

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

US-23 and M-59.

23.    Defendant SCOTT FINK, a public official, has since been charged with transporting a person for prostitution, accepting earnings from prostitution, and aiding and abetting.

24.    Defendant SCOTT FINK was arraigned on June 27, 2023 before the Livingston County District Court as part of a criminal case captioned as *People of the State of Michigan v Scott Fink*, Case No. 2023-0000027950-FH

25.    A copy of the Register of Action is attached as **Exhibit 1**.

26.    Finding irony in how Defendant SCOTT FINK treated and deemed Plaintiff EARL D. BOOTH's prior Facebook postings as negatively affecting the public perception of the Department when Defendant SCOTT FINK has been allegedly operating a criminal "pimp" operation, Plaintiff EARL D. BOOTH made a non-harassing, non-threatening post on his Facebook account about it. **Exhibit 2.**

27.    The Facebook post had photographs of Defendant SCOTT FINK and a partial screenshot of the public website containing the then-register of actions in *People of the State of Michigan v Scott Fink*.

28.    Undoubtedly embarrassed by being caught committing a sex-base criminal acts while serving as an IA investigator in an agency that

warehouses convicts, Defendant SCOTT FINK wanted to halt the public speech of Plaintiff EARL D. BOOTH and retaliate against him for video-recording him at a public courthouse and making public speech about it on the private Facebook account.

29.    On June 28, 2023, one day after being arraigned, Defendant SCOTT FINK petitioned the Clinton County Circuit Court, on an ex parte basis, for entry of a Michigan Personal Protection Order against Plaintiff EARL D. BOOTH.

30.    In that Petition, Defendant SCOTT FINK acknowledges that a federal lawsuit was filed against him but curiously asserts he was "ordered" not to "have contact with Booth while [the lawsuit] goes through the process in court."

31.    This Court has never ordered the parties not to have contact with each other.

32.    Defendant SCOTT FINK further alleges Plaintiff EARL D. BOOTH was placed with a stop work order because, in his view, Defendant SCOTT FINK's "name" was part of a "threat" that appeared along with others on another Facebook post.

33.    This is totally false.

34.    Defendant SCOTT FINK also attached to the PPO petition a

screenshot of the June 27, 2023 Facebook post containing a photograph Defendant SCOTT FINK walking into the Livingston County District Courthouse in Howell, Michigan; a photograph of the outer-doors of Court [Room] 1; and a screenshot of the register of actions at the time regarding *People of the State of Michigan v Scott Fink*, Case No. 2023-0000027950-FH.

35.    The post can be viewed online at: https://bit.ly/FinkPost.

36.    All of such speech is protected by the First Amendment.

37.    For reasons that all not that much clear based upon this filing, the Clinton County Circuit Court issued an ex parte non-domestic PPO enjoining Plaintiff EARL D. BOOTH from "stalking" Defendant SCOTT FINK, which that court specifically include "following or appearing within sight of" Defendant SCOTT FINK; appearing at the [] residence of" Defendant SCOTT FINK (which Plaintiff EARL D. BOOTH never did); from approaching or confronting [Defendant SCOTT FINK] in a public place or on private property (which Plaintiff EARL D. BOOTH never did but did record him); from posting a message through the use of any medium of communications, including the Internet or a computer or any electronic medium, pursuant to MCL 750.411s; and from photographing or videotaping Defendant SCOTT FINK.

38.    The requested (and obtained) Personal Protection Order was

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

undertaken Defendant SCOTT FINK as a public official in retaliation of the lawful exercise of Plaintiff EARL D. BOOTH's First Amendment rights, including recording a public official in a public place[3] and bringing a legal action against Defendant SCOTT FINK for the redress of grievances related to the Social Media Policy.

39.    As a result of the obtainment of the Personal Protection Order on false grounds by Defendant SCOTT FINK without having any notice or opportunity to be heard prior the issuance of the same, Defendant SHERIFF SEAN DUSH (or those at his direction) entered the Personal Protection Order into the Michigan L.E.I.N. system.

---

[3] Multiple federal circuits have recognized that the First Amendment protects an individual's right to record matters of public interest. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011). And there is a significant volume of precedent protecting the creation of information in order to protect its later dissemination. *Id.*; *Fields v. City of Phila.*, 862 F.3d 353, 359 (3rd Cir. 2017) ("recording police activity in public falls squarely within the First Amendment right of access to information."); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("the First Amendment protects the act of making film, as there is no fixed First Amendment line between the act of creating speech and the speech itself."); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (holding that there is a right to record police officers in public); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (noting plaintiff's "First Amendment right to film matters of public interest"); *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022) ("there is a First Amendment right to film the police performing their duties in public"); see also *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1195-1197 (10th Cir. 2017) (finding a free-speech right in the collection of observed resource data). The "First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Indeed, no circuit considering the issue has held there is no First Amendment right to record public officials in public places. See *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831-832 (1st Cir. 2020) ("while some courts of appeals have held that this right to record is not clearly established in some contexts for purposes of qualified immunity, none has held that the right does not exist.").

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

40.    As a result, Plaintiff EARL D. BOOTH has been punished and subjected to further arrest for the exercise and proposed exercise of his First Amendment rights.

**COUNT I**
**DEPRIVATION OF PROCEDURAL DUE PROCESS**
**(AGAINST DEFENDANT DUSH)**

41.    The prior allegations are alleged word for word herein.

42.    The minimum requirements of due process under the Fourteenth Amendment includes written notice, the opportunity to be heard in person, and to present evidence <u>prior</u> to any deprivation of rights, with the exception for emergency circumstances for which an immediate post-deprivation process must be provided.

43.    A party may maintain a procedural due process § 1983 claim in federal court if he alleges and proves that there was a constitutional violation under color of law and—

    a.    the state did not have a remedy; or

    b.    the state had a remedy but it was deemed inadequate; or

    c.    the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy. *Hann v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

### *The State did not have a remedy*

44.    When Defendant SCOTT FINK filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law, the Michigan non-domestic PPO statute did not require or provide Plaintiff EARL D. BOOTH with any prior written notice or the opportunity to be heard when depriving him of his First, Fourth, Fifth, and Fourteenth Amendments rights.[4]

45.    When Defendant SCOTT FINK filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law, no emergency situation existed to warrant the constitutional preclusion of pre-deprivation written notice and the opportunity to be heard prior to depriving Plaintiff EARL D. BOOTH of his First, Fourth, Fifth, and Fourteenth Amendments rights.

46.    Thereafter, Plaintiff EARL D. BOOTH was not provided any process or final determination prior to the actual deprivation of his First, Fourth, Fifth, and Fourteenth Amendments rights both facially and/or as applied.

---

[4] See *IME v DBS*, 857 N.W.2d 667 (Mich. App. 2014). Similarly, in *Kampf*, the Michigan Court of Appeals found that there is no procedural process violation under a similar the Michigan *domestic* PPO statute. See *Kampf v Kampf*, 603 N.W.2d 295, 299 (Mich. App. 1999). The decision is nothing more than a summary decision as it does not cite, follow, or analyze under the US Supreme Court's test via weighing the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

47.    Therefore, the Michigan non-domestic PPO statute, either facially or as applied, violates Plaintiff EARL D. BOOTH's constitutional right of procedural due process under the Fourteenth Amendment to the United States Constitution.

### *Alternatively, the State has a remedy but it is inadequate*

48.    Even when the *ex parte* PPO is effectively challenged and determined that it was improperly issued, an *ex parte* PPO respondent suffers from the impingement on his or her good name and reputation as Defendant SHERIFF SEAN DUSH receives a true copy of an *ex parte* PPO—rightfully or wrongfully rendered—and enters the same, without requiring proof of service, into L.E.I.N.

49.    Once in L.E.I.N., the issuance of the ex parte PPO remains listed in L.E.I.N. which can be acted upon by government officials without a warrant, regardless of the rightful or wrongful issuance of the *ex parte* PPO.

50.    As such, even the post-deprivation remedy of terminating an improperly issued *ex parte* PPO inadequately leaves a permanent scarlet letter on the permanent or long-term record(s) involving EARL D. BOOTH when an *ex parte* PPO is issued and an *ex parte* PPO respondent has no opportunity to prevent the same from being entered with pre-deprivation notice and a hearing.

51.    While an improperly issued *ex parte* PPO may be listed as "terminated" in the L.E.I.N. system, the initially issuance of that the ex parte PPO remains etched in L.E.I.N. long-term or seemingly forever, see MCL 600.2950a(19)(b) and (20).

### *Due process is violated*

52.    Under any or all of the theories listed above, the procedural safeguards employed under the Michigan non-domestic PPO statute are insufficient to pass constitutional muster required by procedural due process under the Fourteenth Amendment to the United States Constitution.

53.    Defendant SHERIFF SEAN DUSH effectuated the lack of due process by entering the *ex parte* PPO into the Law Enforcement Information Network ("L.E.I.N.") in the absence of sufficient procedural due process.

54.    Defendant SHERIFF SEAN DUSH failed to halt or failed to terminate the effectuation of the unconstitutional *ex parte* PPO in the absence of sufficient procedural due process, and instead, contrary to the protections of the Due Process Clause of the Fourteenth Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") the *ex parte* PPO and thereby permanently entered a permanent and unlawful mark on the official governmental records of Plaintiff EARL D. BOOTH.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

55.    Plaintiff EARL D. BOOTH suffers irreparable injury as a result of the denial of due process, including denial of due process and suspension of his ability to undertake First Amendment protected activity and conduct.

56.    The Michigan non-domestic PPO statute used against Plaintiff EARL D. BOOTH, facially and as applied, violates the Fourteenth Amendment to the United States Constitution.

## COUNT II
## PRIOR RESTRAINT BY *EX PARTE* ORDER
## -PRIOR TO FIRST HEARING-

57.    The prior allegations are alleged word for word herein.

58.    To be entitled to an *ex parte* PPO under the Michigan non-domestic PPO statute, a petitioner who activates the machinery of government need only "*alleges* facts that constitute… conduct that is prohibited under" MCL 750.411s without the trier of fact first determining or making a final adjudication on the merits that the statements or posts were in violation of the Michigan non-domestic PPO statute.

59.    As such and as provided by an illegal Michigan statute, an *ex parte* PPO can issue (as authorized under the Michigan non-domestic PPO statute) without the trier of fact first *determining* that the statements or posts were in violation of the Michigan non-domestic PPO statute and without a final adjudication on the merits.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

60.    Thusly, the Michigan non-domestic PPO statute illegally and unlawfully authorizes prior restraint on an *ex parte* basis contrary to the First Amendment.

61.    Based on the acts and actions of Defendant SHERIFF SEAN DUSH, he has caused and/or materially furthered the effectuation of a prior restraint, issued on an *ex parte* basis, as unlawfully created under the Michigan non-domestic PPO statute without the trier of fact first determining that the statements or posts were in violation of the Michigan non-domestic PPO statute without a final adjudication on the merits by initiating the process (by Defendant SCOTT FINK) or extending the unlawful reach and illegal effectiveness of a prior restraint by entering such in L.E.I.N. by Defendant SHERIFF SEAN DUSH.

62.    Defendant SHERIFF SEAN DUSH further effectuated the unconstitutional *ex parte* prior restraint via and into the Law Enforcement Information Network ("L.E.I.N.") and criminalized First Amendment protected speech and activity.

63.    Defendant SHERIFF SEAN DUSH failed to halt or failed to terminate the effectuation of the unconstitutional *ex parte* prior restraint and instead, contrary to the protections of the First Amendment, did enter into

the Law Enforcement Information Network ("L.E.I.N.") which violate(s) the First Amendment.

64.    The non-domestic Michigan PPO statute effectuates a violation of the First Amendment to the United States Constitution as impermissible *ex parte* granted prior restraint upon Plaintiff EARL D. BOOTH by Defendant SHERIFF SEAN DUSH.

**COUNT III**
**VIOLATIONS OF FIRST AMENDMENT**
**(AGAINST SHERIFF DUSH)**

65.    The prior allegations are alleged word for word herein.

66.    The Michigan nondomestic PPO statute, as applied, illegally and impermissibly interferes and, in fact, suspends First Amendment protected activity, including the rights to record public officials in public places and to speak (communicate on social media) about the alleged illegal acts of public officials.

67.    As such, the Michigan nondomestic PPO statute, as applied, violates the First Amendment.

68.    The Court is requested to declare the Michigan nondomestic PPO statute, as applied, as unconstitutional and enjoin Defendant SHERIFF SEAN DUSH from enforcing the Michigan nondomestic PPO statute in the manner, as outlined above, in which it violates the First Amendment.

## COUNT IV
## FIRST AMENDMENT VIOLATIONS
## (AGAINST DEFENDANT FINK)

69.    The prior allegations are realleged word for word herein.

70.    Plaintiff EARL D. BOOTH engaged in First Amendment protected conduct, i.e. filing a federal lawsuit in *Booth v Fink* that petitioned the government for the redress of grievances.

71.    Plaintiff EARL D. BOOTH engaged in First Amendment protected conduct, i.e. filming the activities of a public official at a public regarding a matter of public concern being the arraignment and preliminary examination of Defendant SCOTT FINK.

72.    By seeking to punish and causing to punish Plaintiff EARL D. BOOTH for undertaking these activities by securing an ex parte PPO by false or incomplete statements and/or for an improper purpose due to the exercise of First Amendment activities, Defendant SCOTT FINK violated the First Amendment.

73.    Plaintiff EARL D. BOOTH suffered injury and damages as a result of Defendant SCOTT FINK's actions, decisions, and related actions, including, but not limited to mental anguish and suffering.

74.     Defendant SCOTT FINK's actions were designed to intentionally or wantonly cause harm via the utter disregard of federally protected rights of Plaintiff EARL D. BOOTH.

## COUNT V
## FIRST AMENDMENT RETALIATION
## (AGAINST DEFENDANT FINK)

75.     The prior allegations are realleged word for word herein.

76.     Plaintiff EARL D. BOOTH engaged in First Amendment protected conduct, i.e. filing a federal lawsuit in *Booth v Fink* that petitioned the government for the redress of grievances.

77.     Plaintiff EARL D. BOOTH engaged in First Amendment protected conduct, i.e. filming the activities of a public official at a public regarding a matter of public concern being the arraignment and preliminary examination of Defendant SCOTT FINK.

78.     Plaintiff EARL D. BOOTH engaged in First Amendment protected conduct, i.e. making public comments on social media about the illegal actions of a public official charged with transporting a person for prostitution, accepting earnings from prostitution, and aiding and abetting.

79.     By seeking to punish and causing to punish Plaintiff EARL D. BOOTH for undertaking these activities by securing an ex parte PPO by false or incomplete statements and/or for an improper purpose due to the exercise

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

of First Amendment activities, Defendant SCOTT FINK wrongfully and illegal retaliated against Plaintiff EARL D. BOOTH for exercising his First Amendment rights and for undertaking First Amendment protected conduct.

80.     Plaintiff EARL D. BOOTH engaged in protected conduct in bring the prior lawsuit in *Booth v Fink*; when video-recording Defendant SCOTT FINK in a public place regarding matters of public interest/concern; and by speaking about the allegations of illegal acts under by a public official on social media.

81.     Defendant SCOTT FINK undertook an adverse action by securing an improper ex parte PPO by false or incomplete statements and/or for an improper purpose and such would deter a person of ordinary firmness from continuing to engage in such conduct.

82.     There is a causal connection between protected conduct and the adverse action that was motivated at least in part by Plaintiff EARL D. BOOTH's protected conduct.

83.     Plaintiff EARL D. BOOTH suffered injury and damages as a result of Defendant SCOTT FINK's actions, decisions, and related actions, including, but not limited to mental anguish and suffering.

84.    Defendant SCOTT FINK's actions were designed to intentionally or wantonly cause harm via the utter disregard of federally protected rights of Plaintiff EARL D. BOOTH.

## RELIEF REQUESTED

85.    WHEREFORE, Plaintiff EARL D. BOOTH respectfully requests this Court to enter judgment—

a.    Awarding economic, non-economic, nominal, and/or punitive damages against Defendant SCOTT FINK for his violations of the First Amendment as outlined herein;

b.    Awarding only nominal damages of $1.00 against Defendant SHERIFF SEAN DUSH for any found violations of the US Constitution as outlined herein;

c.    prospectively enjoin Defendant SHERIFF SEAN DUSH from enforcing the Michigan Non-Domestic Personal Protection statute (M.C.L. § 600.2950a) and any government directive emanating therefrom that has caused or is causing violations of the US Constitution, including the First Amendment, as outlined herein;

d.    Issuing a declaration against Defendants that the non-domestic Michigan PPO statute, as applied, violates and continues to

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

violate Plaintiff EARL D. BOOTH's First and Fourteenth Amendment rights;

e.   Awarding attorney fees and costs pursuant 42 U.S.C. § 1988; and

f.   Granting such further relief as the case should require or deserves.

Date: July 9, 2023                    RESPECTFULLY SUBMITTED:
                                      /s/ Philip L. Ellison
                                      OUTSIDE LEGAL COUNSEL PLC
                                      by PHILIP L. ELLISON (P74117)
                                      Attorney for Plaintiff
                                      PO Box 107
                                      Hemlock, MI 48626
                                      (989) 642-0055
                                      pellison@olcplc.com