UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL D. BOOTH,

      Plaintiff,

                                   Case No. 1:23-cv-758

v.

                                   Hon. Hala Y. Jarbou

SCOTT FINK, et al.,

      Defendants.

_____/

## OPINION

Plaintiff Earl D. Booth brings this action under 42 U.S.C. § 1983 against Scott Fink, an internal affairs investigator for the Michigan Department of Corrections ("MDOC"), and Sean Dush, the Sheriff of Clinton County, Michigan.  Booth sues Dush in his official capacity only. (Am. Compl. ¶ 3, ECF No. 24.)  Before the Court is Dush's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 53).  The Court will deny the motion.

## I. BACKGROUND

### A. Booth's Allegations

Booth, who worked as a corrections officer for the MDOC, alleges that in January 2022, Fink investigated him for a purported violation of the MDOC's social media policy after Booth posted a video on his Facebook account showing him being "sucker punched" by a prisoner.  (Am. Compl. ¶¶ 8-12.)  Booth alleges he filed a lawsuit against Fink challenging Fink's interpretation of the policy.

Later, in May 2023, the Michigan State Police arrested Fink in connection with a criminal investigation.  On June 27, 2023, Fink was arraigned at the Livingston County District Court due to criminal charges against him related to prostitution.  (*Id.* ¶¶ 23-24.)  Booth made a post on

Facebook regarding these events.  The post consists of a video of Fink leaving his vehicle and walking into the county courthouse, as well as a copy of a docket sheet showing that Fink was scheduled for a probable cause hearing in a criminal case against him.  (Facebook Post, ECF No. 24-2.)  In the post, Booth wrote, "Someone doesn't look to happy!!!"  (*Id.*, PageID.151.) Booth is the one who took the video of Fink.  (Am. Compl. ¶ 28.)

### B. Fink Obtains an *Ex Parte* PPO against Booth

The day after the court hearing, Fink applied for an *ex parte* personal protection order ("PPO") against Booth from the Clinton County Circuit Court.  (*See* Pet. for PPO, ECF No. 24-3.) According to the petition, Booth and Fink were both employees of the MDOC at the Charles Egeler Reception and Guidance Center.  Booth had filed a federal lawsuit against Fink regarding Fink's investigation of Booth.  Fink claimed that he was ordered to not have contact with Booth due to that lawsuit.  Fink also contended that the MDOC had suspended Booth from work in April 2023 due to a "threatening" Facebook post in which Booth named Fink and other MDOC employees. (*Id.*, PageID.153.)

According to Fink, Booth also attended a court hearing involving Fink that had "nothing to do with [Booth], the MDOC, or [Fink's] employment with the MDOC."  (*Id.*)  Fink contended that, at the hearing, Booth placed a camera in Fink's face, followed him around the courtroom taking pictures, stood next to him while Fink sat at a table, entered the courtroom when Fink did, and later followed Fink out of the courtroom.  (*Id.*)  Booth then filmed Fink as he walked out of the courthouse and filmed him walking toward his vehicle and then driving away.  (*Id.*)

As further evidence to support his petition for the PPO, Fink provided a copy of a "stop order" from the MDOC prohibiting Booth from entering MDOC grounds, which Booth had posted on his Facebook page.  (*Id.*, PageID.154.)  Fink appears to have also provided the court a printed copy of the Facebook post by Booth with the comment "Someone doesn't look to happy!!!"  (*Id.*,

2

PageID.155.)  The printed copy included one frame of the video showing Fink standing outside the county courthouse.  (*Id.*)

The state court issued the *ex parte* PPO on June 29, 2023, prohibiting Booth from "following or appearing within sight of" Fink, appearing at Fink's residence, "approaching or confronting [Fink] in a public place or on private property," or "photographing or videotaping" Fink.  (*Ex Parte* PPO, ECF No. 24-4.)  The *ex parte* PPO also prohibited Booth from "posting a message through the use of any medium of communication, including the Internet or a computer or any electronic medium, pursuant to [Mich Comp. Laws §] 750.411s."  (*Id.*)

### C. Michigan's Nondomestic PPO Statute

Michigan's nondomestic PPO statute allows an individual to seek a PPO in circuit court to enjoin stalking or harassment, i.e., "conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s."  Mich. Comp. Laws § 600.2950a(1).

Section 750.411h prohibits "stalking," which involves "a willful course of conduct involving repeated or continuing harassment of another individual[.]"  Mich. Comp. Laws § 750.411h(1)(e).  Harassment involves "repeated or continuing unconsented contact," but it "does not include constitutionally protected activity or conduct that serves a legitimate purpose."  *Id.* § 750.411h(1)(d) (emphasis added).

Section 750.411i prohibits "aggravated stalking," which incorporates the same definitions of stalking and harassment that are found in § 750.411h.  *See* Mich. Comp. Laws § 750.411i(1)-(2).

Section 750.411s prohibits posting a message on the internet or through any medium of communication if "all of the following apply:"

(a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.

(b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Mich. Comp. Laws § 750.411s(1).

The latter statute

is designed to prohibit what some legal scholars have referred to as "cyberstalking by proxy" or "cyberharassing by proxy."  In other words, . . . it is not the postings themselves that are harassing to the victim; rather, it is the unconsented contacts arising from the postings that harass the victim.  In particular, the statute envisions a scenario in which a stalker posts a message about the victim, without the victim's consent, and as a result of the posting, others initiate unconsented contacts with the victim.  These unconsented contacts, arising from the stalker's postings, result in the harassment of the victim.  In this manner, by posting a message that leads to unconsented contact, the stalker is able to use other persons to harass the victim.

*Buchanan v. Crisler*, 922 N.W.2d 886, 895-96 (Mich. Ct. App. 2018).  Like the stalking and harassment provisions, § 750.411s expressly permits "constitutionally protected speech or activity."  Mich. Comp. Laws § 750.411s(6).

A court can issue a PPO without notice to the individual to be enjoined if the petitioner can show that "immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will precipitate adverse action before a personal protection order can be issued."  Mich. Comp. Laws § 600.2950a(12).

### D. Dush Enters the *Ex Parte* PPO into the LEIN

The nondomestic PPO statute also provides that the court issuing the PPO must designate a law enforcement agency responsible for entering the PPO into Michigan's law enforcement

information network ("LEIN").  Mich. Comp. Laws § 600.2950a(10).  When that agency receives a copy of the PPO, it must "immediately" enter it into the LEIN.  *See* Mich. Comp. Laws § 600.2950a(17).  Defendant Dush allegedly received the *ex parte* PPO and entered it into the LEIN.  (Am. Compl. ¶ 39.)

As a result of the *ex parte* PPO and its entry into the LEIN, Booth's license to carry a concealed pistol was suspended.  (7/5/2023 Letter to Booth, ECF No. 24-5.)

**E. Booth's Claims**

Booth filed this action on July 10, 2023, after the state court issued the *ex parte* PPO.  He filed an amended complaint on July 11, 2023.  In Count I of his amended complaint, Booth claims that Dush deprived him of his right to due process because the state court issued the *ex parte* PPO without giving him an opportunity to respond and then Dush "effectuated" that due process violation by entering the PPO into the LEIN system.  (*Id.* ¶ 52.)  In Count II, Booth contends that Michigan's non-domestic PPO statute violates the First Amendment by authorizing a prior restraint on speech through an *ex parte* proceeding.  He contends that Dush "effectuated" this unconstitutional prior restraint by entering the PPO into the LEIN system.

In response to Dush's motion to dismiss, Booth now contends that he challenged the PPO in state court and on July 31, 2023, that court "vacated that portion of the PPO which contained the prior restraint."  (Pl's Resp. to Mot. to Dismiss 7, ECF No. 57.)  Thus, he contends that his constitutional rights were violated from June 29, 2023, to July 31, 2023.

In Count III, Booth seeks a declaration that the non-domestic PPO statute, as applied to him, violated his rights under the First Amendment.  He also seeks an injunction preventing Dush from enforcing the statute in a manner that violates Booth's First Amendment rights.

Counts IV, V, and VI are asserted against Defendant Fink.

With regard to Dush, Booth seeks nominal damages of $1.00 for any constitutional violations.  Booth also seeks the declaratory and injunctive relief mentioned above.

### F. Procedural History

In August 2023, the Clerk of the Court entered a default against Fink for failing to plead or respond. In September 2023, Fink pleaded guilty to four offenses, two involving prostitution, one involving surveiling an unclothed person, and one involving the use of a computer to commit a crime.[1]  Fink is currently serving a sentence of probation.

## II. STANDARD

The Court reviews motions for judgment on the pleadings under the same standard as for a motion to dismiss under Rule 12(b)(6).  *Oakland Tactical Supply, LLC v. Howell Twp.*, 103 F.4th 1186, 1191 (6th Cir. 2024).  "[A]ll well-pleaded material allegations of the pleadings . . . must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Id.* at 1191-92 (quoting *Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 284 (6th Cir. 2010)).

## III. ANALYSIS

### A. General Challenges

#### 1. Jurisdiction:  *Rooker-Feldman* Doctrine

Dush argues that the Court lacks jurisdiction because Booth is effectively seeking relief from a state court decision.  "The *Rooker-Feldman* doctrine embodies the notion that appellate review of state-court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters."  *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009).  Where the "source of injury"

---

[1] *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=768463.

for the plaintiff's claim is the state court judgment, then this Court lacks jurisdiction to review the claim. *Id.*  But "if the source is anything other than 'the state-court judgment itself,' then *Rooker-Feldman* does not apply." *Kitchen v. Whitmer*, 106 F.4th 525, 535 (6th Cir. 2024).

    *Rooker-Feldman* does not apply because Booth challenges the constitutionality of the PPO statute applied by the state court.   "[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action."  *Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *accord Reed v. Goertz*, 598 U.S. 230, 235 (2023).  In addition, Booth's claims against Dush, particularly his claim for damages, are not the functional equivalent of an appeal from the circuit court proceedings because Dush was not part of those proceedings. *See Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 341 (6th Cir. 2023) ("An action seeking new relief against new parties does not have any of the characteristics of an 'appeal' and does not seek to 'reject' a prior state-court judgment.").

    Accordingly, the Court has jurisdiction to proceed.

### 2. *Heck v. Humphrey*

    Dush also contends that the Court cannot consider Booth's challenge under the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994), which held that a plaintiff cannot bring a claim for relief under § 1983 if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]"  *Id.* at 487.  Booth was not convicted or sentenced, so *Heck* does not apply.  *See Ongori v. City of Midland*, No. 16-2793, 2017 WL 6759111, at *2 (6th Cir. Sept. 8, 2017) ("We have found no authority that extends the *Heck* doctrine to a case where a private citizen sought to challenge the outcome of a proceeding which did not result in a criminal conviction or confinement.").

### B. Available Relief

Because Booth brings claims against Dush in his official capacity only, the Court will examine what relief is available to Booth for such claims.

#### 1. Damages

Booth seeks nominal damages from Dush.  That relief is not available here.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978)).  "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."  *Id.*  Thus, the Court must determine what entity Dush represents.

#### (a) Office of Sheriff or Clinton County

Dush contends that he is an employee and agent of the office of the Clinton County Sheriff, so the sheriff's office is the real defendant to Booth's official capacity claim against Dush.  However, a Michigan sheriff is sometimes an agent of the county and sometimes an agent of the sheriff's office.  *Marchese v. Lucas*, 758 F.2d 181, 188-89 (6th Cir. 1985).  The sheriff is the law enforcement arm of the county and "makes policy in police matters for the [c]ounty."  *Id.*  Thus, either of those entities could be the true defendant, depending on the circumstances.

In any case, Booth does not state a viable claim against those entities.  When seeking monetary relief from a local government entity like the country or the sheriff's office, a plaintiff must plead that the entity's "policy or custom" was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  In this case, Booth does not allege a policy or custom of either the sheriff's office or the county.  To the contrary, he contends that he is challenging "the practice of the [nondomestic PPO] statute author[iz]ing the imposition

8

of a prior restraint . . . and its unconstitutionality for violations of the First Amendment and procedural due process." (Pl.'s Resp. Br. 10.)  The PPO statute is not a policy of the sheriff's office or the county.  It is a state statute.  Accordingly, to the extent Booth seeks monetary relief from the county or the sheriff's office, he fails to state a claim.

### (b) State of Michigan

On the other hand, as Dush himself points out, Michigan law *required* him to enter the *ex parte* PPO into the LEIN.  "Where county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999).  Consequently, by following the requirements of Michigan law, Dush was acting as an arm of the state.  As such, Booth's official capacity claim against Dush is effectively one against the State of Michigan.  That claim, to the extent it seeks damages, is barred by sovereign immunity.  "The Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009).  "[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver . . . ." *Id.* (quoting *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)).  The Court can raise this issue *sua sponte* because it goes to the Court's jurisdiction to hear the claim.  *Id.* at 345.  Michigan has not waived its sovereign immunity for civil rights suits filed in federal court.  *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Consequently, Booth is not entitled to damages for his claims against Dush.

### 2. Injunctive and Declaratory Relief

Booth also seeks declaratory and injunctive relief regarding the purported First Amendment violation stemming from the *ex parte* PPO.  Specifically, Booth seeks an injunction

preventing Dush from enforcing the PPO statute against him in a manner that violates his First Amendment rights.

### (a) Sovereign Immunity

Unlike a claim for damages, sovereign immunity does not prohibit this sort of relief, as long as Booth satisfies the exception in *Ex parte Young*, 209 U.S. 123 (1908).  That exception permits "prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]"  *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).  The exception applies to officials who "possess 'some connection with the enforcement of the [challenged law],'" and who are "likely [to] enforce the law against the plaintiff."  *Doe v. DeWine*, 910 F.3d 842, 484 (6th Cir. 2018).

The allegations of the complaint satisfy the foregoing requirements.  Dush was involved in enforcement of the PPO statute when he entered the *ex parte* PPO into the LEIN.  And as the person in charge of the agency designated to enter that PPO, he was likely responsible for its enforcement against Booth.  *See McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (permitting suit for injunctive relief under *Ex parte Young* against a sheriff involved in "the enforcement chain of the challenged statute").  For similar reasons, the Court is not persuaded by Dush's argument that Booth has sued the wrong party because Dush did not issue the *ex parte* PPO.  Whether or not Dush is responsible for that PPO, an injunction against Dush would prohibit him from enforcing it.[2]

Dush contends that *Ex parte Young* does not apply, citing *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003), in which the Court of Appeals held that a county sheriff was not an arm of the state.  *Id.* at 811.  That case is distinguishable because it did not involve the facts at issue here,

---

[2] Such relief may be moot at this point, but that is a separate issue that the Court will address below.

where a sheriff was performing a nondiscretionary obligation required by state law and was involved in enforcement of the statute.  Instead, the sheriff was accused of implementing the unconstitutional policies of a county jail.  *Id.* at 815.  Dush was not implementing county policies; thus, at this stage, the Court is not persuaded that *Ex parte Young* is inapplicable.

### (b) Challenge to Michigan PPO Statute

Booth argues that Michigan's nondomestic PPO statute is unconstitutional because it permits a judge to enter an order enjoining protected speech or conduct on an *ex parte* basis, without an adversarial hearing or adjudication on the merits that the speech or conduct is not protected.  *See Williams v. Rigg*, 458 F. Supp. 3d 468, 478 (S.D.W.V. 2020) ("[T]he majority rule first requires a finding on the merits that such speech is unprotected before an injunction can be issued enjoining further speech.").   According to the Supreme Court,

> There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate.

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968); *accord Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) (quoting *Carroll*).

*Ex parte* orders restraining protected speech or conduct are particularly problematic because, without "evidence and argument offered by both sides," "there is insufficient assurance of the balanced analysis and careful conclusions which are essential in the area of First Amendment adjudication." *Id.* at 183.  Furthermore, "[a]n order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order."  *Id.*  "The participation of both sides is necessary for this purpose" and "the failure to invite participation of the party seeking to exercise First Amendment rights reduces the possibility of a narrowly drawn order, and

11

substantially imperils the protection which the Amendment seeks to assure." *Id.* at 184.  Dush notes that Booth had an opportunity to challenge the *ex parte* PPO *after* it issued.  However, "the denial of a basic procedural right . . . is not excused by the availability of post-issuance procedure" that, "at best, could have shortened the period" in which Booth was allegedly prevented from exercising his First Amendment rights.  *Id.*; *see Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

To be sure, as indicated above, the relevant provisions of Michigan's PPO statute all expressly permit constitutionally protected conduct.  In addition, the Michigan Court of Appeals has imposed an affirmative obligation on circuit courts to ensure that a PPO will not impact protected speech or conduct.  Of particular relevance here is Mich. Comp. Laws § 750.411s, which is the statute cited by the circuit court in Booth's case when enjoining him from posting messages about Fink through the Internet.  Before issuing a PPO under that provision, the Michigan Court of Appeals requires a court to find that "a prior posting violates that statute." *Buchanan v. Crisler*, 922 N.W.2d 886, 901 (Mich. Ct. App. 2018).  And if the court finds such a violation, then the court must further "ensure that constitutionally protected speech will not be inhibited by enjoining an individual's online postings." *Id.*  The court can enjoin such postings only "[i]f the court determines that constitutionally protected speech will not be inhibited[.]" *Id.* at 902.

The Court agrees with Dush that the statute's exceptions for protected conduct mean that, to some extent, the statute is not to blame if the circuit court's order violated Booth's First Amendment rights.  An order restricting protecting conduct is technically prohibited by the statute. Nevertheless, the claim Booth raises here is primarily a *procedural* one, i.e., whether a court can decide how a PPO would impact protected conduct on an *ex parte* basis, without the possibility of

participation by the person who will be subject to the court's restraints.  In *Procter* and *Carroll*, courts indicated that an *ex parte* process does not adequately protect First Amendment rights.  Yet that is the process that the Michigan PPO statute, as well as the Michigan Court of Appeals' decisions interpreting it, appear to permit.

The concerns in *Carroll* about *ex parte* proceedings are particularly salient here, where the person who sought the PPO (Fink) appears to have been a government employee attempting to restrict public comment on criminal proceedings against him.  Booth plausibly contends that his video recordings and social media posts about these circumstances touched on a matter of public concern.  (*See* Am. Compl. ¶ 66.)  Such speech cuts to the "heart of the First Amendment's protection."  *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985)).  "[T]he First Amendment affords the highest protection to public speech about public figures."  *Buchanan*, 922 N.W.2d at 900.  For that reason, the Michigan Court of Appeals instructs that "when it is asserted that [online] postings involve a matter of public concern, the court must consider the content, form, and context of the . . . postings to determine whether they involve constitutionally protected speech on a matter of public concern."  *Id.* at 902.  That safeguard is important, but it is unlikely that a person applying for a PPO will be the one to "assert" that the speech at issue involves a matter of public concern, which is why an *ex parte* proceeding may be inadequate.  In Booth's case, for instance, it is possible that the state court was unaware of the full content and context for Booth's speech (including the pending criminal charges against Fink) because Booth did not have an opportunity to present it.  And had the court been aware of his perspective and intent, it might have issued a different PPO at the outset rather than modifying it two weeks later.

13

Dush responds that "due process is flexible" and that an *ex parte* order is permissible where there are exigent circumstances, such as the need to prevent an individual from suffering immediate and irreparable injury before notice to the restrained party.  He cites *Kampf v. Kampf*, 603 N.W.2d 295 (Mich. Ct. App. 1999), in which the Michigan Court of Appeals rejected a due process claim challenging an *ex parte* PPO entered to protect the petitioner from physical injury by her spouse.  *Id.* at 299.  However, Dush fails to grapple with the particular concerns in *Carroll* regarding *ex parte* orders that encroach on First Amendment rights.  Those rights were not at issue in *Kampf*.  Moreover, a restraint like the one in *Kampf*, which prohibited a physically abusive husband from approaching, stalking, or threatening his battered spouse, prevents a far more immediate and irreparable injury than an *ex parte* PPO like the one issued against Booth, which apparently prohibited him from approaching and recording a government employee in public places and posting comments about him on social media.

*Carroll* does allude to a possible exception for "special, limited circumstances" where the speech "is so interlaced with burgeoning violence that it is not protected by the First Amendment." *Carroll*, 393 U.S. at 180.  However, Booth's case does not appear to fit that particular exception. Moreover, the facts of *Carroll* are instructive.  That court overturned a 10-day restraining order that the state court believed was necessary to protect community members from a white supremacist rally consisting of "deliberately derogatory, insulting, and threatening language" that could be construed by listeners as a "provocation" to black minorities and an "incitement to the whites."  *Carroll*, 393 U.S. at 349.  The restraining order prohibited a white supremacist organization from holding further meetings that would "tend to disturb and endanger the citizens of the County."  *Id.*  The defendants argued that this restraint was "justified by the clear and present danger of riot and disorder deliberately generated by petitioners."  *Id.* at 351.  The Supreme Court

disagreed, finding the state's interests "adequately served by criminal penalties imposed *after* freedom to speak has been so grossly abused that its immunity is breached." *Id.* (emphasis added). The Court "insisted upon careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit." *Id.* If the circumstances in *Carroll* did not justify an *ex parte* prior restraint, it is difficult to see the how the circumstances in Booth's case could have justified one.

To be fair, although Booth contends in his complaint and his response brief that *ex parte* proceedings were constitutionally inadequate, he cites little support for his argument other than *Williams*. He does not cite *Carroll* or *Procter*, which appear to be the most relevant cases for his position. Nevertheless, the thrust of his argument is clear. And Dush cites *Procter* in his reply brief, so he is aware of that case and the procedural requirements it quotes from *Carroll*. In light of those requirements, the Court is not persuaded that Dush is entitled to judgment on the pleadings.

In short, Dush plausibly alleges that the lack of procedural protections in the Michigan nondomestic PPO statute deprived him of his First Amendment and due process rights. To be clear, the Court makes no final conclusion about whether the nondomestic PPO statute is unconstitutional as applied to Booth, whether Booth was engaged in protected speech or conduct, whether an *ex parte* proceeding was improper, or whether Booth suffered any constitutional injury. Instead, the Court finds that Dush is not entitled to judgment based on the pleadings alone.

### IV. Mootness

One question not addressed by the parties is whether the case is moot. As indicated, Booth contends for the first time in his response to Dush's motion that, after he challenged the *ex parte* PPO, the "state court judge vacated the portion of the PPO which contained the prior restraint." (Pl.'s Resp. Br. 7.) In addition, he clarifies that he is not "not challenging the particular PPO that

was issued." (*Id.* at 12.)  Instead, he is challenging the validity of the Michigan nondomestic PPO statute that permitted an unconstitutional PPO to issue without sufficient process.  (*Id.*)   In other words, his need for prospective injunctive or declaratory relief on the *ex parte* PPO (and on the related question of whether the statute, as applied to him through that PPO, is constitutional) has apparently evaporated.

"A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue."  *United States v. Solano-Rosales*, 781 F.3d 345, 355 (6th Cir. 2015) (quoting *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005)).  A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome."  *Thomas v. City of Memphis*, 996 F.3d 318, 323-24 (6th Cir. 2021).  "Because constitutional mootness goes to [the Court's] subject-matter jurisdiction under Article III," the Court has "a continuing obligation to enquire whether there is a present controversy as to which effective relief can be granted."  *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023) (quoting *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004)).

Even assuming that issuing an *ex parte* PPO violated Booth's constitutional rights, it is not clear how entering declaration to that effect would serve any purpose at this stage.  "To determine whether a request for declaratory relief is moot, [the Court asks] 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'"  *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).  It is not clear to the Court what those interests might be here.

16

Likewise, the Court cannot discern a reason to enter an injunction prohibiting future enforcement of the PPO statute where the *current* PPO does not impact Booth's First Amendment rights. To be sure, there is an exception to mootness for circumstances that are "capable of repetition yet evading review." *Memphis A. Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021) (quoting *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006)). This exception "applies when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur." *Id.* (quoting *Blackwell*, 462 F.3d at 584). The first prong is typically satisfied for any claim involving a Michigan PPO, because such orders generally last for less than a year and that timeframe is too short for full review. *See Lindke v. King*, No. 19-cv-11905, 2023 WL 3634262, at *11 (E.D. Mich. May 24, 2023) (citing cases). But it is not clear how Booth can satisfy the second prong.

Consequently, the Court will require Booth to show cause why the Court should not dismiss the remaining claims against Dush as moot.

## V. RULE 5.1 CERTIFICATION

Dush notes that Booth is challenging the constitutional validity of a Michigan statute and has not filed the notice required under Rule 5.1 of the Federal Rules of Civil Procedure. That rule requires a party filing a "pleading, written motion, or other paper drawing into question the constitutionality of a . . . state statute" to "promptly" file a "notice of constitutional question" and serve it on the state attorney general. Fed. R. Civ. P. 5.1(a)(1)-(2). Similarly, when the constitutionality of a "state statute affecting the public interest" has been "drawn in question" in proceedings before the Court, and neither the state nor its employees or officers are parties to the case, then *the Court* must certify that fact to the state attorney general and permit the State to intervene as if it were a party. 28 U.S.C. § 2403(b) (emphasis added). This case meets the

17

requirements of Rule 5.1 and 28 U.S.C. § 2403(b).  Booth has not filed the requisite notice, but the Court will certify the case to the Michigan Attorney General as required by that statute.

## VI. CONCLUSION

For the reasons herein, Booth cannot obtain damages against Dush, but Dush is not entitled to judgment on the pleadings.  Accordingly, the Court will deny Dush's motion for judgment on the pleadings.  The Court will require Booth to show cause why the Court should not dismiss the claims against Dush because they are moot.  In addition, the Court will certify the case to the Michigan Attorney General.

The Court will enter an order in accordance with this Opinion.


Dated: August 14, 2024                    /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          CHIEF UNITED STATES DISTRICT JUDGE